Good afternoon, Your Honors, and may it please the Court, Chelsea DelCorto, on behalf of Plaintiffs Appellants Gerald Ross Pizzuto and Thomas Eugene Creech, and I will reserve seven minutes of my time for rebuttal. The District Court's ruling should be reversed because, under the District Court's view of redness, plaintiff's claims are either always too early or too late, and this heads-the-state-way, tail-to-inmates-loose approach to redness cannot possibly be the law. The plaintiffs are two death sentence inmates in the state of Idaho that have been seeking information from the state on its plans to execute them for the last two and a half years. Plaintiffs filed suit last March, and the District Court dismissed plaintiff's 1983 action, saying that it lacked subject-matter jurisdiction because the claims were speculative and thus unright because both plaintiffs have outstanding collateral attacks of their death sentence pending. Plaintiffs are unaware of a single case from anywhere in the country that supports the District Court's view of redness. This view also subverts binding Supreme Court precedent regarding phase of execution in 1983 actions and is undermined by cases in this circuit and around the country that have allowed 1983 actions to proceed in tandem with collateral challenges to an inmate's death sentence. Beginning with the binding Supreme Court precedent as set forth in Gomez v. United States District Court for the Northern District of California, in Gomez, the Supreme Court vacated a stay of execution because it found that there was no good reason for the inmate's delay in bringing his execution challenge under 1983. Following Gomez, courts around the country routinely deny phase of execution in 1983 actions when they find that the inmates were dilatory in bringing such claims. Mr. Del Torso, I have some questions I'd like to pose to you before you go too far so that you have a chance to address them. The first is this. I understand the arguments. I think they're pretty good ones. It doesn't make sense to make an absolute rule to say that an action can't be right until every single issue on appeal has been resolved. So I'm sort of with you on that. However, isn't it correct that there's no death warrant that's yet issued in these cases? Yes, Your Honor. It is correct that there is no death warrant issued in either of the plaintiff's cases. Okay. Then would you agree that once a death warrant is issued, that then the ability to bring a 1983 claim should be right? Yes. I would agree with you that once the death warrant is issued, the claims are right. But we believe that they are also right now. And if I could just briefly talk about how this works in the state of Idaho. So once a death warrant is issued, the state has a maximum of 30 days in which to set an execution, meaning that in this case, if the death warrant is issued, the plaintiff would only have 30 days to adjudicate their claim. And especially in the case of Mr. Pizzuto, who is very ill, he suffers from a whole host of diseases. Most importantly to this litigation are his coronary artery disease, chronic ischemic heart disease, and bladder cancer. He's had two heart attacks since 2006, and he has a right to ensure that his execution is not made cruel and unusual punishment by his individual medical physician. And so what the state would be requiring of plaintiffs, if they were required to wait until a death warrant issued for their claims to be right, is to adjudicate these very serious issues on a very compressed timeframe. Counsel, do you agree that we have an independent duty to look at mootness issues on appeal, irrespective of whether the district court did? Yes, Your Honor. So in light of the issuance of the revised protocol, and you can address this at whatever time in your argument you think is appropriate, but I went through your complaint in some detail, and it strikes me that claims 3, 4, 5, 6, 8, and 9 are now moot. And you may have other challenges, but even if we reverse the district court on rightness, how are 3, 4, 5, 6, 8, and 9 not currently moot, given that a new protocol was issued admittedly at the 11th hour, vis-a-vis our argument? Your Honor, I don't believe that those claims are mooted just because of the issuance of the new protocol. For the key reason that the new protocol still gives the state four options for the drug, so it still does not provide the inmates with what drugs will be used to execute them. But many of your specific claims were specifically they haven't issued a new protocol, and they said the old protocol is never going to be the one that's going to be used, and how are the claims that are at least partially or entirely based on they haven't issued the operative protocol, how are those not moot? Well, Your Honor, the current protocol that was just issued still gives the director of the IDOC unfettered discretion to change the protocol at any time, and so there isn't a guarantee that this is going to be the protocol that's used to execute Mr. Pizzuto or Mr. Creech. So the fact that a state has issued a protocol and said this is the extant protocol, doesn't every state always have the ability to change the protocol? I mean, I don't understand the fact that they could change it means that your claim that they haven't issued one isn't moot. I definitely think that given the issuance of the new protocol, there would likely be certain aspects of our claims that would need to be amended, but I think that that doesn't take away from the fact that the new protocol doesn't provide the name of the drug that will be used, and it still keeps live most of the claims for the information that we're seeking, given that the drugs used are the most important thing that the plaintiffs are seeking here. And I also think that that is something that can be determined if the case is remanded to the district court under 12B6, but the protocol has no bearing on what the district court has said, which is that these claims are unright because of the outstanding collateral attacks of the death sentence. So the issuance of the new protocol does not change that issue or that aspect of the court's ruling in any way. And even if we do need to make some amendments to the petition because of the issuance of this new protocol, there's still, as I just said, very important questions that remain, and namely would be the name of the drug or the drug that the state will use to execute the plaintiff. Mr. Caruso, I have a question for you. If we were to hold, contrary to your argument, but if we were to hold that even though the district court may have made a mistake in rationale, that the 1983 challenge is still not right because of the lack of a death warrant or other reasons. Would we have any jurisdiction to provide in such an order that upon issuance of the death warrant, the state shall disclose its planned execution procedures in a specified window of time? Your Honor, of course, that is something that if in the unfortunate event that the district court's position is not reversed, that is information that we would appreciate getting as soon as the death warrant was issued, especially given that in the last execution, the drugs that were going to be, that were used to execute the inmate were not revealed until 18 days before the execution. I'm not sure about that question, but I would like the opportunity to address it on rebuttal if possible, so I can address it then if that's okay. That would be fine. I have, I'm going to have the same question for Mr. Claus, so you'll be able to rebut his argument. Thank you, Your Honor. So if we look at the cases from around the country that discuss the phase of execution in 1983 actions, we see that these claims are presently right, even though there's no death warrant, and even though they're pending collateral attacks to the death sentence, to the inmate's death sentences. If we look at Harris v. Johnson in the Fifth Circuit, Mr. Harris asserted that he was not late in bringing his 1983 claims because there was no chalice, because his habeas petition was still pending, and he waited until the habeas petition had been exhausted before bringing these claims. And the Fifth Circuit rejected this argument and said that there was no impediment to his 1983 claims proceeding in parallel with his collateral challenges to his death sentence. The same is true for the Eleventh Circuit in Halford v. Allen, where the Eleventh Circuit denied a phase of execution in a 1983 action and said that at the very latest, by the time the Eleventh Circuit panel denied the inmate's habeas petition, it should have been reasonably foreseeable to a prudent person that an execution was looming, and there was nothing that precluded the inmate from bringing the challenge to the execution. And the same is true for the Fifth Circuit in Whitaker v. Livingston, where the Fifth Circuit said that the inmate should not wait until a death warrant is issued, because if they waited until the death warrant was issued to challenge the execution, it would be too late. And the Northern District of Florida in Jones v. McAndrew found that a claim very similar to the state's, which argued that the inmates were there too early, was disingenuous at best, given that if the inmates had waited until the 11th hour before their execution, the state would undoubtedly have argued that they were there too late. And this is exactly what we saw from the state of Idaho in Rhoades v. Ranke, one of the last two. Counsel, what's your response to the state's argument at pages 18 and 19 of their brief that they wouldn't argue that a delay caused solely by the decision of a federal court that it doesn't have jurisdiction until collateral appeals are complete wouldn't be held against you, and they wouldn't raise that claim if the collateral appeals were done, there were a death warrant, and you brought suit then? What's your response to their argument? Your Honor, a couple of things in response to that. The first is that I will note that while the state does say that, they also provide right after that language, a great deal of qualifying language about their reservation of rights to object on a basis of timeliness, if necessary. So they basically cabin that statement to the direct issues here in this appeal, which would not include a method of execution challenge. And without knowing what drugs the state will use, which is what we're seeking in this information case, there's no ability to assess whether or not we need to bring a method of execution challenge based on the drugs that they will use. And the second thing that I would say is that I think that that argument, while it is great to have the assurance that they will not make a timeliness argument in the future, it has no bearing on ripeness. Just because the state will not make that argument does not mean that the plaintiff's claims are not right today. So just because they will not do that does not mean that plaintiffs should be precluded from bringing the challenges now with the benefit of time and the ability to actually litigate these claims in a normal manner as opposed to in a compressed timeframe when they are up against a 30-day clock because of their execution. And if we look at cases from around the country, including in this circuit, we see that courts have allowed 1983 three actions to proceed in tandem with collateral attacks of an inmate sentence, which just further undermines the state's position that these two things cannot coexist. In First Amendment Coalition versus Ryan, this court allowed certain of the inmates' claims to proceed despite the fact that several of the inmates had collateral challenges to their death sentences pending. Counsel, since you brought up First Amendment Coalition, isn't the holding in First Amendment Coalition very clear that on the merits, your contention that you have a right to access about the execution drugs is meritless? That unless First Amendment Coalition were overruled, how could you ever succeed on the merits on your entitlement to the names of the execution drugs? Your Honor, in First Amendment Coalition, the things that were at issue there were the manufacturers of the drugs. The plaintiffs knew what drugs were going to be used. And so we do not believe that First Amendment Coalition has any preclusive effect on our claims seeking information about the names of the drugs that will be used. So you don't believe that First Amendment Coalition or other cases allow a state to have different protocols with different drugs? So your contention is that you're entitled to know which specific one of the options they've identified in the protocol is going to be used now, even though no death warrant has been issued, and that that claim is both ripe and not foreclosed by binding precedent? Yes, Your Honor. We are entitled to know what drug the state will use. They have been able to provide that information in past executions, in past protocols, and they are now choosing to make it unclear and to obfuscate which drug will be used. Is it that they're making it unclear or they're maintaining for themselves different pathways depending on perhaps who's being executed and what the medical condition is at the time? I mean, as I've read their new protocol, it names the drugs. It just has different drugs as options. And you're saying that that violates the Constitution to have different options? Yes, Your Honor. We believe that under the inmates' right to due process, to meaningfully be able to challenge their methods of execution, they do need to know the names of the drugs that will be used, and that First Amendment Coalition does not preclude a due process claim. It was limited to a First Amendment information claim, and it was also limited to the issues of the manufacture of the drugs and the training of those that would be conducting the execution. So it's unconstitutional in your view for a state to ever have two, for example, different protocols, one with name drug A and one with name drug B, without telling you, even before a death warrant is issued, whether they're going to go with your client with A or B. That violates the Constitution? Your Honor, perhaps not without ever telling us, but the issue here is that in Idaho, the practices to conceal this information until very near in time to the execution, it is after the death warrant is issued. Ms. Del Corso, challenge the method of execution if necessary. And Judge Gould, I also, while I can hear Ms. Del Corso and I can see her picture, it appears to me her video has frozen. Mine too. Yes, she's frozen on mine. Because a part of communication benefits from what we can see in inflection and so on. I'd really like the IT people, if they can, to fix that. Look, Sam, are you, are you on this? I see the problem as well. Okay, we'll hold off and we won't penalize Ms. Del Corso's time. Ms. Del Corso, can you still hear us okay? Okay, I think it may have frozen entirely now. I'm stepping away for a moment. I'll be right back. I'm going to do that too, Judge Gould. I'll be back in a minute. That's fine. So it looks like she disconnected. She's probably trying to get back into the meeting, but if I don't see her in a minute, we'll give her a call. Judge Bennett, you and I are temporarily manning the bench as we await Ms. Corso's return. Does Mr. Klaus still with us? You're not frozen, right? Just conserving energy. Mr. Klaus, are you in Boise? Yes, Your Honor, I am. So, Sam, were you able to phone Ms. Del Corso? Yes, Your Honor, I was able to phone Ms. Del Corso. I think that's my number. Thank you. Thank you. Sam, can Sam give us an update on attempts to contact Ms. Del Corso? We can be patient. We can be patient. We're working on getting her back online. She'll just be in a few more minutes. Would the court mind if I stood up for a moment? No, not at all. Sam, my whole screen's gone. There's Sam's name. We need Sam's name. What? We can't all see and hear you, Judge Kuhl. I can't see either of you. Here she comes. Is Sam on now? Sorry, I was just kidding. Sam, I can't see any of the participants. Do you see anything at all on your screen? Or just completely dark? Totally dark. And moving the mouse doesn't make it come back on? It didn't just go to sleep, perhaps? No. I can see everyone on my screen. I can see everyone as well, including Ms. Del Corso. I wonder if maybe your monitor got unplugged, Judge? Did someone maybe knock a cable loose? Not that we're aware of. Can I get off and reconnect? Yeah, you can certainly try that. Although you would need to be able to click the leave meeting button. You would need to be able to see that. We can't. I can see you now. It came back to me? Yep. We're all back? I think we're set, thanks for the patience of all. Okay. Your Honor, I apologize for that. No problem. It happened. Stacy, add another minute to Ms. Del Corso's argument. Okay, go for it. I believe when I was unfortunately cut off that I was addressing Judge Bennett's question about the constitutionality of whether the state has to provide this information. And while I won't say that it is unconstitutional for at some point in time the state not to provide this information, when we look at what happens in Idaho, the time in which this information will be provided, which is 30 days before the execution or less, is a violation of the inmate's due process right for notice and an opportunity to be heard on an execution challenge. Because there's no way to meaningfully mount a challenge to their execution in 30 days' time. I had perhaps misunderstood then part of your argument on ripeness. And I now have some additional difficulties with your argument. But your argument, so I want to make sure I understand it, is that at a certain point in time, your client has a constitutional right to have the state say which of two or three options drug-wise it's going to use. And that time has come for both of your clients already. And so the claim that your client is making that it is entitled to know the drug is you say you're entitled to know it right now for both of your clients which path they're choosing. And those claims are right in your view. Yes, Your Honor, those claims are right. But your claim is you have a constitutional, your clients have a constitutional right to know which path they're going to choose the state right now as we speak. Yes, Your Honor, I would say that's especially true for Mr. Pizzuto who is very far along in his post-conviction appeal. The Idaho Supreme Court has already denied Mr. Pizzuto's recent Atkins post-conviction appeal. Mr. Pizzuto has had five previous post-conviction appeals of his sentence. And it is clear that while of course we continue to advocate on Mr. Pizzuto's behalf in those appeals, it is clear that it's an uphill battle at this point and that his execution is very near in time. And so for him to not know what drugs the state will use to execute him prevents him from determining whether he needs to bring a challenge to that method of execution. Counsel? Yes, Your Honor. How do we know that the execution is near in time if no death warrant has issued? We are looking at the past practices of the state of Idaho in their last two most recent executions where very shortly after the Supreme Court has denied cert in the whatever post-conviction appeal is pending. In those cases, it was two habeas petitions. Very within days of that denial, the state sought a death warrant. And once the death warrant is issued, there are 30 days. So when we look at how close Mr. Pizzuto is to those events occurring, we know that his execution is imminent. And if we look at some of the cases discussed earlier, even though there is no death warrant, that does not preclude a finding of imminency because of how far along in the process these plaintiffs are. Counsel, Judge Flood, if I can interject. So what is the basis for your premise that he could not get a fair notice and opportunity to be heard within 30 days after a death warrant, given the fact that your client would be able to ask a district court to order some expedited procedure or ask the district court to give a stay for a period of time? The premise is that we will be forced to litigate on a compressed timeline. And if we are required to seek a stay or required to seek an injunction, that is a very taxing standard. When plaintiffs diligently brought these claims in a time with which they could be litigated on a normal timeframe and they now and they would have had the benefit of the 12B6 standard, which is one of the lowest standards in the law. And under a 30-day timeline, they would be forced to bring a claim, hire experts, conduct discovery, and do a complete full litigation within this very short timeframe, which is prejudicial to their right to due process. And so what we have asked for is exceedingly reasonable in just allowing these claims to proceed on a normal timeframe, which is what the cases from around the country that have addressed the issue, what they suggest should be the timeframe is that there is no compression of the inmates' claims and that they're allowed to proceed so that there can be a decision on the merit without the need to seek a stay of execution. And as I mentioned, this is especially important for Mr. Casuto, who is very ill and suffers from several diseases that could render his execution cruel and unusual punishment. He should not be required to litigate those claims in 30 days when there are very real risks of harm to him, depending on what drugs the state would use. And if we look at death penalty jurisprudence more generally, we see that this would also be unrealistic because of the fact that oftentimes collateral attacks of a death sentence are pending up until moments before an inmate is executed. And so under this theory, the plaintiffs would, their claims would be right for a few moments and that can't possibly be the law. There has to be a time before the 11th hour when their claims are right based on Gomez and based on all of the other cases to address this issue. And I'm going to reserve the rest of my time for rebuttal. That's okay. That's fine. Thank you. Daniel, Mr. Claus. Thank you, Your Honor. May it please the court. I'd like to begin by discussing with the court why defendants believe the issuance of the revised execution protocol essentially moots the claims that are here before the court. Mootness is a jurisdictional item which the court can take up on appeal. The basic question for mootness is determining whether there's a controversy to which effective relief can be granted. The general purpose of this entire lawsuit seems to be by reading the amended complaint that a revised execution protocol is necessary for plaintiffs to move on. The plaintiffs have now received that relief. As the amended complaint stated in ER 107, it remains necessary for this court to order the state in legally binding terms its intentions with respect to future executions. And that's the relief that's been essentially given by the issuance of the revised execution protocol. I looked at the protocol perhaps too briefly, but I read through it. I didn't see anywhere where it specified what particular chemicals or mix of chemicals would be used to execute these two prisoners. The execution protocol does list out the drugs that IDOC will look at to be able to use to effectuate the execution. Part of the practical principle here of why the state can't specify what drugs it will use is because the state has difficulty finding those drugs. And so the state doesn't want to be put in a corner as far as declaring which drug it will use before it knows for certain that those drugs will be available. The plaintiffs have said we have a constitutional right to force the state to pick and tell us right now. So that's what their claim is of the constitutional right. So I'm having difficulty understanding the rightness argument because they're claiming they have a constitutional right to know right now. It may well be that the claim is meritless and that there is no such constitutional right. But if their claim is we have a right to know this instance, the Constitution gives us the ability to force the state to pick right now as we sit here. Why is that claim not right? Again, I understand why it might not succeed on the merits. But if they say they have the right right now and it's being violated right now, why isn't that claim right? Your Honor, I don't think, well, first of all, the presumption that they have that right, the state would argue with, of course. But why it wouldn't be right right now is because there's no death warrant. There's nothing for the state to plan for. There are eventualities that will come to place, but there's no requirement for the state to have when the plaintiffs want at their convenience to institute a litigation. But counsel, counsel, that may well be why the claim is meritless. But if someone is contending, I have the Constitution gives me the right to know now. I'm not sure why that would be unripe as opposed to a court deciding you have no constitutional right to know now you lose on the merits. But if the claim, again, is I have the right to that information as we sit here, it's difficult for me to understand how that claim is unripe. That claim may not be that may well not be right. That's not the claim that's here that the plaintiffs have made. The claim that the plaintiffs have made is that they have a right. They are asking the court to come in and intervene in the discretion of a state agent to determine the execution protocol. And what they're asking for relief is the issuance of a revised protocol, which is different than actually questioning the method of execution. And I think that's an important distinction on rightness of right. A method of execution is more concrete because you have a you have an express protocol by a state agent. So there's a concreteness there that you can challenge either as applied or as written that that protocol is somehow constitutionally invalid. But that's not what the relief being sought here is or what the plaintiffs are saying. The plaintiffs are saying we have a right to be able to come in and have a court force you to exercise your discretion because it's convenient for us in the litigation strategy that we're determining. It's not a method of execution claim. OK, unless Judge Bennett wants to follow up on that question right now, I have some questions for you. So my first question is, once a death penalty, a death warrant issues. Would the state concede that the claims under 1983 are ripe at that time? Yes, Your Honor. Once that becomes certain that the execution will take place and there's really no other way to decide that plaintiffs haven't offered anything other than their belief that the numbers show that their client won't be successful. OK, OK. But once there's a death warrant and the state agrees that the claims are under 1983, then why? Yes, Your Honor, once the collateral bills are stopped, which conceivably could occur before the issuance of the death warrant. OK. So then another question is, as I looked at that standard operating protocol, it looked to me like once the death warrant issues and it served on the Idaho Department of Corrections, there's a provision for one of the wardens to give a copy of that. The prisoner. So the prisoner's going to be aware of a death warrant shortly after it served, right? Correct. And at that point, is there any procedure for when the counsel for the counsel of record for the prisoner, condemned prisoner, would get notice of that death warrant? Yes, Your Honor. I believe that the counsel will be notified. And in addition, in this case, counsel has also made an appearance in the sentencing court in Idaho and is challenging the release of the death warrant on different grounds that aren't before this court. And therefore, just being as appeared in the court, they will have additional notice of when it issues. And one of the provisions I saw suggested that when there's a death warrant, the prisoners moved to an isolation cell. And if the prisoners in isolation cell, can he communicate with his counsel? Yes, Your Honor. Communication with counsel is never foreclosed during dependency of the actual execution procedures. There are various levels of visitation that are controlled by statute with spiritual advisors or family members, but the protocol and the statute always allow for in-person visitation with counsel. So let me ask you the question I asked Ms. Del Corso earlier. If we were to hold that we affirm the district court's dismissal of redness, not on the rationale that the district court gave, but based on some other consideration or facts that we can see from the record. If that were the case, would we have the ability to, at the same time, while we perform the dismissal, order the state to disclose the chemicals it's going to use in a certain period of time? Your Honor, I would believe no, because I believe that's a discretionary issue for a state agent to make. And I think issues of federalism would keep that from happening. But I'd also, if I could take a step back, I think we're operating on presumption that there's some information that the state is holding back or will hold back until the last minute. And I think that's a presumption that needs to be addressed because that's not necessarily the case. That being said, the state, at this stage, hasn't procured any execution drugs for Mr. Pezzuto. So that information is impossible for the state to give until it has it. So the presumption that there's something being hidden, I think it's something that should be eradicated. Would it normally be the case that the state would line up its execution drugs before it issues the death warrant? Or would it normally be the case they would do that afterwards? Judge Gould, I know that we very rarely have executions. It's been 12 years since our last execution. So I hesitate to say there's any sort of practice in place that we have been due. I would say that ideally, we would, and in the new protocol, there's a provision for testing of the drugs for purity and potency. And those will be shared with counsel. So it's not something that we're hiding the ball or that we're trying to have our standards of what we've done. Some information can't be disclosed if you don't have the information. Okay, but once you do have the information, how's the prisoner able to make a challenge if it's not communicated to that prisoner within a reasonable time before the scheduled execution? I do not think there's plans to withhold the information of the execution chemicals until the last minute. As soon as that information becomes available and tested and we have a chemical that can be used, that information will be provided. So it will be provided as soon as possible. But there will be some lag just to make sure that the testing and so forth, the chemicals pass the testing and we're using it. Otherwise, we might kick up a dust storm on something that's never going to be used. If there's been a challenge to that procedure with those chemicals, I understood you to say that the state would not claim that was a last minute challenge to the execution. Your Honor, are you asking questions about the briefing and what was said in the briefing or are you asking me based on these new facts or hypotheticals? I'm not sure whether I'm talking about a question from my reading of the briefing or the protocol or just what you said today. But I know there are cases that, as the appellant has argued, that disfavor last minute challenges to an execution. And I sort of understood from something you argued earlier that because you don't have the information now, the state would not claim that a subsequent challenge was a last minute challenge in that sense. But I'm sort of fuzzy on this. So the state has stated that it would not, based on the rightness judgment entered by the court, that the state would not pursue an undue delay or last minute argument against a state in that particular circumstance. But the state has reserved its ability to argue an undue delay in other circumstances, such as the state believes that the execution protocol has been available to plaintiffs since before this litigation began. And instead, defendants have chose to pursue this particular litigation to force a revised protocol. And there could be an argument there that the state wants to preserve that by choosing to pursue this litigation, plaintiffs have unduly delayed in doing something they could have done vis-a-vis a method of execution challenge years ago. So, Your Honor, based on that logic, based on those representations, if it was some new information that the plaintiffs wanted to pursue that hadn't been provided, I would believe that would not be an unnecessary delay in the execution. However, the state has provided a very limited realm of the drugs that would be used in Mr. Pizzuto's execution. There's not a wide range or variety, and the plaintiffs have said in their statements and their documents that they have experts on hand. I don't see how narrowing this from three to four drugs to one is going to cause an unnecessary delay when that could be done by plaintiffs right now.  Counsel, this is Judge Rawlinson. Do you agree with opposing counsel that the execution of these petitioners is imminent? I believe it's imminent, Your Honor, but I don't believe it's imminent. And I think if we do not say that the collateral appeals have some sort of possibility of undermining the judgment of conviction or the ultimate execution, then I don't know why there's even a place for them. Counsel, I'm sorry to interrupt. I missed a word you said. I'm sorry. In the answer to Judge Rawlinson's question, you said they're not imminent but they're, and then whatever word you said I didn't hear. Uncertain, Your Honor. Okay, thank you. Sorry to interrupt. But if they're imminent, then why doesn't that dispose of the rightness argument? Because if they're imminent, then they should be considered right, correct? Your Honor, I think I would answer that by presenting the converse. If they're imminent, what prevents the state from having a death warrant issue right now? It's because there are collateral appeals that are pending that make the execution uncertain. To me, that sounds like inconsistent arguments to say it's imminent but it's uncertain. Because if it's imminent, that militates, in my view, toward opposing counsel's view that we should decide it now because it will be rushed. If you're agreeing that it's imminent, then that takes away the argument that there would be sufficient time to decide the issue once the death warrant has been issued. I suppose, Your Honor, I would qualify my answer then by saying imminent to me means, in this circumstance, that he is nearing the end of his appeals process. But I think there needs to be a respect for that appeals process here, and especially as the district judge noted, this is an appeals process happening in the state court, that we need to be respectful of what's going to happen there. Because the relief that was being asked to the district court was not just to declare something unconstitutional, it was to affirmatively come in and require a state actor to issue something contrary to discretion. But counsel, to me, again, their claim is we have the right to this now. And I'm still having trouble understanding why that claim, even if meritless, isn't right. We want to order the state to do something. We want the district court to order the state to do something in the state's position, as it argued in opposition, or it argued in its motion to dismiss, but not on appeal, is that's meritless. There is no such constitutional right. But I still don't understand what it is that stops the plaintiff from making that claim and the state from saying there is no such right, you lose. I do think the state has made that claim in the alternative, Your Honor. I think the rightness has to do with what the actual claim is. If this were a method of execution claim where there was something more concrete, that would be different. But we've talked about Mr. Pizzuto a lot, but we haven't touched on Mr. Preach, who is years away from his execution. And so to come in to say we need, because we think our claims, our appeals are going to be denied ultimately, that gives us some sort of rightness now to force you to issue an execution protocol, which you may never use on our clients or on us because we're challenging those now. That's what's being asked. It's not being asked to declare something that's constitutional or not. It's requiring the state to prepare for something that's still uncertain. That's not how Ms. Del Corso described it in her argument. I mean, I'm looking at paragraph 519 of their amended complaint. It talks about they have the right to know the type of drugs to be used now. And that's what I asked Ms. Del Corso. Are you saying that you have a constitutional right to now know which specific drug is going to be used to execute the two plaintiffs? And she said, yes, my clients have that right now. And so I'm going to stop asking this, but I still don't understand how that claim that the Constitution is being violated right now because I don't know which drug is going to be used. I just still don't understand how that isn't right, although I can understand how it might be meritless. Your Honor, I think maybe we all need to step back and look. There was an execution protocol that did list drugs in place when that question was being asked in 2019 before this litigation was instituted. And that was referred to – that Idaho Department of Correction referred to plaintiffs and their counsel to that question. Counsel has had that same information. There's been years to be able to – they've had that information that they've wanted. What counsel wanted and what plaintiffs wanted was to have that revised in a way that suited them. And that's what we said is not right because there's no certainty that it's ever going to be used against their clients until their appeals are finally settled. Mr. Klaus, let me pose another question to you that may be somewhat fanciful in the real world context. But there have been states like California and Illinois that have had a whole bunch of death penalty prisoners. But then they put all executions on hold for some indeterminate time period so they could further study procedures and ways to execute. And is it totally out of the question that something like that could happen in the state of Idaho? I mean, is it remote that Idaho could decide to just put executions on hold? Your Honor, I'm not sure if I'm the right person to ask that question or if my client is the right person to ask that question. Maybe it's a question for the governor and the legislature. But you probably are closer to knowing what the governor's office might do than I am as a federal judge. Your Honor, you flatter me. You flatter me, Your Honor. I think the complexities there are too hard to answer at this point because the involvement of the Department of Corrections is in the actual carrying out of the sentence. The other parts of issuance of the death warrant are within the hands of the prosecutor and the state. And, of course, the other issues of clemency are with the governor. I wish I could answer that question for you. I just don't have that information. Okay, thank you. Counsel, do you agree with opposing counsel that this case is not moot because the newly issued protocol contains some of the same challenge provisions? Judge Rollins, I do not agree with that. I believe that the revised protocol moots out the majority, all but one, actually, of the plaintiff's claims. There's one claim the plaintiffs have that is a separation of powers claim that doesn't seek necessarily information. However, that separation of powers claim in a 1983 context, I don't believe this court has jurisdiction to hear or a federal court has jurisdiction. This is a discreet issue of whether the Idaho Constitution's separation of powers provision is violated by the enabling statute that allows the director to promulgate an execution procedure. I don't believe that… I'm sorry. Go ahead. No, Your Honor. Please. I was going to ask you, how are the other claims mooted if some of the provisions being challenged have been incorporated into the new protocol? In review of the amended complaint and the information that the plaintiffs are seeking, there's a set of information that is being sought that's very clear throughout the amended complaint. Those are at ER 149, paragraph 498, ER 153, paragraph 519, ER 154, paragraph 529, ER 156, paragraph 539. Those all cite the same information that the plaintiffs are seeking in this case, and I'd be happy to be able to go through those. The first bit of information that the plaintiffs are seeking is the number and amount of drugs to be used. I think that's been disclosed now. The second type of information that the plaintiffs want is how drugs were made, will be obtained, their source, amounts, expirations, how IDOC will obtain the drugs, etc. I think that has now been provided in the revised execution protocol. As I have said, the IDOC has not yet been able to procure the execution chemicals to be used in any potential execution of Mr. Pizzuto or Mr. Preach, but no death warrants issued yet. That information that IDOC has either been provided or will be provided through that testing provision, where plaintiffs will be able to see that the potency and purity of the drugs have been granted. The one bit of information that the plaintiffs want that is not available are the identities of the drug suppliers and the execution team members. They will be able to have other information regarding the execution team members' qualifications, those sorts of things, but the identities are not available by Idaho rule to anybody outside IDOC. The third type of information that's clear in these paragraphs that the plaintiffs want is when a new SOP will be issued, and that's been answered. The fourth is whether witnesses will be able to observe the insertion of ID lines, and that's been answered in the execution protocol in the Execution Chemical Preparation Administration, page 6. Procedure for ID placement and length is another information that they've said they wanted, and that's been disclosed in the same document, Execution Chemicals Preparation Administration, page 7. The sixth bit of information that they're desiring is who will participate in the execution, training, qualifications, and requirements. That information has been provided outside the identity of those individuals, which is not available for disclosure. And seventh is whether and how consciousness checks will be required, and that's been disclosed in the Execution Chemicals Preparation Administration. And finally, the information, the last bit of information routinely requested is contingency procedures for unforeseen occurrences, and that's been disclosed in Execution Chemicals Preparation Administration, page 10. The information that the plaintiffs have sought has been provided to them. There's no relief left for this court to give on those claims. That's moot. The only remaining one is the separation of powers issues, and as I said, we believe that there's not federal court jurisdiction over those claims. Well, counsel, on that point, although when I read the complaint, the only basis alleged was 1983, but in opposition to your motion to dismiss, the plaintiffs said that claim should be viewed as a pendant claim and that there's jurisdiction under the court's supplemental jurisdiction in the court's discretion. So, I mean, given that that was the argument they made, and I mean, I think that listing 1983 as jurisdiction and then in the op saying no pendant supplemental, I think it's a stretch to say there is no jurisdiction if it's viewed as pendant or supplemental. Well, your honor, in response to that, I think we have to look if the remaining cases that it's pendant on are moot, there is no pendant jurisdiction to hang the claim on. Well, certainly if everything else goes for some reason, then there can't be pendant jurisdiction. But I don't think that plaintiff argued that it states in their op that it states a right under 1983, even though that's what the complaint said. Your honor, and that's an argument that was placed before the district court was whether or not there was jurisdiction over the claim. And in addition, Idaho Supreme Court has already directly ruled on that issue and said that it is not a violation of the separation of powers issue. That's state versus Osborne 102, Idaho 405. See that as it may, that's probably not before the court, but if these issues are now moot, there's not been any other expression of what the jurisdiction would be for the separation of powers claim. Unless there are further questions, well, if there's no more further questions on that, I'd like to just briefly address the argument of the application to Gomez rule. This dire circumstances set by counsel saying if we will not be able to have a claim that's either too early or too late under the circumstances is just inaccurate reading of the Gomez rule. The Gomez rule sets forth that it's an unnecessary delay in the filing. And if there's an unnecessary delay, then there's a presumption against a stay. But we've seen that even in the Supreme Court's contest recently in Mersey, there are instances where the court has overcome and seen that the presumption should fail. So there is not a ever too early or too late. And if a stay is granted, if plaintiffs are able to show that they have a likelihood of success, there can be a stay granted and there can be not a compressed litigation of the claims, but there can be a full litigation of the claims. And that's what we saw in Buckley where the case was sent back for years at a time on a stay while issues were litigated. So I think the argument that application of rightness here puts plaintiffs at a disadvantage of never being able to bring their claims isn't exactly accurate. And with that, if there aren't further questions from the court, I would. I have a question for you. Once plans to use particular chemicals on these two appellants have been made and disclosed, am I correct that under Idaho's procedures, the warden could change those plans? Change the chemicals at any time up to the time of execution? Your Honor, this is not the warden. The warden doesn't have authority to amend or alter the protocol, but the director of IDOC does. Now, that being said, there may be a theoretical right to do that. The only reason that would happen is if somehow the drugs that were procured originally were no longer fit for use. If the director of the IDOC changes the chemical package to be used, is notice of that to be given to the attorney of record? And when? And would that change the schedule for execution? Your Honor, it could potentially change the schedule for the execution, depending on when in the time frame things are. Counsel for the plaintiffs, the condemned individual, would certainly be noticed as soon as possible, as soon as it became aware that that's what would happen. Is there anything I didn't leave that I left unanswered in your question? No, I think that's the answer. Oh yeah, one thing you didn't answer was the component of would there be a change in the schedule for the execution? And I'm not sure, Your Honor, if I could answer that. There could potentially be a change in the timeline for the execution if the protocols and preparations were not able to be met on that time frame. So in that case, the death warrant would not necessarily be returned, and there might be further actions that would need to be taken in order to reschedule the execution. The state wants to make sure that the execution is done as humanely as possible, and the state will take those steps as necessary. So I think that is the answer to your question overall, Your Honor, is that the state will make sure that the proper steps are taken and not act rashly. Counsel, although the execution chemicals preparation and administration procedure specifically says there must be no deviation from the procedures, protocols, and chemicals in this procedure without prior consent from the director of IDOC. So that doesn't have in itself a time limit prior to the execution in which the director of the IDOC can give his consent to a change in the protocols, right? That's correct, Your Honor. Thank you for your time. I don't have anything further if the court has no further questions. Thank you. Now, Ms. Del Corso, get some rebuttal time here. Thank you, Your Honor. I'd like to start by addressing your question, Judge Gould, about whether the court would have jurisdiction to require the state to disclose the information at a certain time if it ruled that the claims were not right. And we think that if the claims were determined by this court to be unright at this time, it would be difficult to see how the court could issue an order requiring the state to disclose the drugs at a specific time. However, if that were the court's inclination, the court could note in the decision, the concern, and in explaining the rationale, could note that perhaps this information should be provided at the appropriate time. And we've seen federal district courts obviously grant days of the execution so that the lethal injection litigation can proceed. And I would just like to address a couple of the points made by the state. The first point is that while the state says that our claims are all moot because they've provided all of the information requested, as I emphasized in my statements earlier, they still have not provided the name of the drug. And there is no other state in the country that we're aware of except for South Carolina where a state does not reveal prior to the issuance of a death warrant what drugs it will use to execute the inmates. And again, without revealing this information, there can be no meaningful challenge to that execution. And we have seen the state of Idaho in the past disclose in their protocol that they would be using a three-drug protocol for the execution before the death warrant issued. So we know that they have the ability to do so if they wanted to do so. And the state also emphasized that this is not a method of execution challenge. That's because we don't have the information about the drugs to determine whether a method of execution challenge needs to be made here. And what they would be asking us to do by saying that they've provided four options is in saying we could challenge the previous protocol, what they're essentially saying is we should bring a method of execution challenge against four different drugs, although we don't know which one of these drugs will actually be used. And that is an unfair burden to put the plaintiffs to in requiring them to defend against four different drugs, any one of which could potentially be the drug that will be used to execute them. And the state said that we could have challenged the prior protocol, but what we have seen is that in the last two executions, very near in time to those executions, the protocol changed. So there's a moving target because we would be challenging a protocol that based on their patterns and also the representations made to my co-counsel at the meeting between the parties in either, I believe in early 2019, they represented that the protocol would change before the next execution, just as it has changed before the two prior executions. So after making that representation, it is unclear why the state would then take the position that we should be required to challenge a protocol that the state itself represented would change. And I believe your honor that that's all that I have based on the arguments today and the arguments in our briefing. We believe that these claims are right under death penalty jurisprudence. There needs to be a time before the 11th hour, before an execution, when an inmate can meaningfully challenge the way in which they will be executed by the state. And for that reason, we ask that this court in accordance with all other courts around the country that have had, that have considered this issue, find that these claims are presently right and reverse the district court's decision. Thank you so much for your time. Thank you, Mr. Corso. So I'm going to just take a moment here, unless there's further question from Judge Robinson or Judge Bennett that will conclude our argument. But I wanted to reiterate to counsel that the court really appreciates your appearing remotely with your arguments and you both provided excellent advocacy within the best traditions of the bar. And so we appreciate your efforts and it's a difficult case and the panel will now submit it and you will hear from us in due course. So thank you again. With that, the argument shall close. Thank you, your honor. Thank you, your honor. This court for this session stands adjourned.
judges: Gould, Rawlinson, Bennett